UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FREEMON JORDAN, SR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:18-CV-510 DRL-MGG |
| RADATZ *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Freemon Jordan, Sr., a prisoner without a lawyer, is proceeding in this case "against Officer West and Sgt. Radatz, in their individual capacities, for allegedly violating his rights under the Eighth Amendment by being deliberately indifferent to Mr. Jordan when he was getting raped in his cell by other inmates on March 25, 2018." ECF 37 at 3. On November 24, 2020, the defendants filed a summary judgment motion arguing that Mr. Jordan did not exhaust his administrative remedies before filing suit. ECF 50. The defendants provided Mr. Jordan the notice required by N.D. Ind. L.R. 56-1(f). ECF 52. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a response brief; and (B) any materials that the party contends raise a genuine dispute." Because the motion was served by mail, Fed. R. Civ. P. 6(d) provided Mr. Jordan an additional three days. Therefore, the deadline for filing a response was December 26,

2020. The deadline passed nearly five months ago, but Mr. Jordan has not responded. So the court will now rule on the motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

"If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e). Because Mr. Jordan has not responded to the defendants' summary judgment motion, he has not properly addressed their assertions of fact and the court accepts these facts as undisputed:

2

1. Plaintiff was incarcerated at Indiana State Prison ("ISP") during the incidents alleged in his complaint. [*See* ECF 1.]

2. There is a Grievance Process at ISP, and one was in place throughout the times Plaintiff alleges his rights were violated. [Ex. A at 1 ¶ 5.]

3. IDOC Policy and Administrative Procedure 00-02-301, effective October 1, 2017, was the IDOC policy governing the grievance process and how an offender could exhaust his administrative remedies using that process, in effect at the time of the events alleged in this litigation. [Ex. A. at 2 ¶ 8–9; Ex. B.]

4. The grievance program is intended to promote prompt and effective resolution of a broad range of issues or complaints offenders may have, including those described in the Complaint filed by Plaintiff. [Ex. A at 1 ¶ 6.]

5. As an inmate incarcerated with IDOC, the Offender Grievance Process has been available to Plaintiff. Documentation on the Offender Grievance Process is included in the orientation paperwork received upon intake at ISP. [Ex. A at 4 ¶ 20.]

6. The grievance process begins with the informal resolution process. The offender must attempt to resolve his complaint informally by contacting an appropriate staff member within five working days of the date of the incident. [Ex. A at 2 ¶ 10.]

7. If informal resolution is unsuccessful, the offender then proceeds to the formal grievance process. The formal grievance process begins when the offender submits a completed state form 45471 "Offender Grievance" to the Grievance Specialist. [Ex. A at 2 ¶ 14.]

8. The Offender Grievance must be submitted no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Grievance Specialist. [Ex. A at 2 ¶ 14.]

9. The grievance submitted by an offender is screened by the Grievance Specialist to determine whether the submitted grievance meets the requirements for a formal grievance as set forth in the IDOC grievance policy. [Ex. A at 2–3 ¶ 15.]

10. If the grievance submitted by the offender is rejected during screening, the grievance is returned to the offender along with a state form 45475 "Return of Grievance" indicating the reason for the rejection and permitting the offender to resubmit a corrected grievance within five (5) working days. [Ex. A at 3 ¶ 15.]

11. If an adequate grievance is received, the Grievance Specialist assigns the grievance a case number and provides a receipt for the grievance to the offender. [Ex. A at 2–3 ¶ 15.]

12. If the grievance is not resolved in a manner that satisfies the offender, or if he did not receive a grievance response within twenty (20)

working days, the offender may pursue the issue by filing a formal appeal to the Warden/designee's office. The appeal must be submitted on state form 45473 "Offender Grievance Appeal" within five (5) working days of the grievance response or the expiration of the twenty (20) working day deadline for a response. [Ex. A at 3 ¶ 16.]

13. If the offender wishes to appeal the Warden/designee's appeal response, the offender must check disagree on the appeal response and submit the complete State Form 45473, "Offender Grievance Appeal," along with any pertinent documentation to the Offender Grievance Specialist within five (5) business days of receipt of the Warden's/designee's appeal response. The Offender Grievance Specialist must then enter the completed State Form 45473 and any additional documentation received into the grievance database within two (2) business days of receipt. The decision of the Department Offender Grievance Manager is final. [Ex. A at 3 ¶ 17.]

14. The successful exhausting of a grievance by an offender includes timely pursuing each step or level of the informal and formal process, including the appeals process. An offender must use the proper grievance forms in order to exhaust successfully and must file each grievance within the time outlined in the Offender Grievance Process. [Ex. A at 2 ¶ 12.]

15. IDOC keeps records on every formal grievance and formal appeal filed by an offender. [Ex. A at 4 ¶ 24.]

16. On or about April 30, 2018, Plaintiff filed an Offender Grievance, in which he alleged he had been raped. [Ex. A at 4 ¶ 27; Ex. D.]

17. On May 21, 2018, Mr. Wallen provided Plaintiff with a grievance response regarding the April 30 grievance, noting that Plaintiffs claim of being raped was unsubstantiated. [Ex. A at 4 ¶ 28; Ex. E.]

18. IDOC records indicate that Plaintiff did not file an appeal with the Department Grievance Manager regarding the April 30 grievance. [Ex. A at 4 ¶ 29; Ex. C; Ex. E.]

19. On or about May 2, 2018, Plaintiff filed a formal grievance, alleging again that he was raped. [Ex. A at 5 ¶ 30; Ex. H.]

20. On May 21, 2018, Mr. Wallen provided Plaintiff with a grievance response regarding the May 2 grievance, indicating that Plaintiff's complaint failed to name any existing prison guards or inmates and that Plaintiff's allegations were unsubstantiated. [Ex. A at 5 ¶ 31; Ex. G.]

21. IDOC records indicate that Plaintiff did not file an appeal with the Department Grievance Manager regarding the May 2 grievance. [Ex. A at 5 ¶ 32; Ex. C; Ex. G.]

ECF 51 at 2-5 (brackets in original).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Here, the undisputed facts show that Mr. Jordan filed formal grievances about the claims raised in this lawsuit but did not file appeals after those grievances were denied. As a result, Mr. Jordan did not exhaust the available administrative remedies before he filed this lawsuit. *See* ECF 50-2 at 3; *Perez*, 182 F.3d at 535; *Pozo*, 286 F.3d at 1025. Summary judgment must be granted.

For these reasons, the court:

(1) GRANTS the summary judgment motion (ECF 50);

(2) DISMISSES this case WITHOUT PREJUDICE; and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Mr. Jordan.

SO ORDERED.

June 7, 2021  *s/ Damon R. Leichty*
Judge, United States District Court